## Miraglia Appeal

*Francis P. Valverde*, for petitioner.

*Edward M. Murphy*, for respondent.

HOBAN, P. J., July 12, 1954.—This is an appeal from the decision of the Lackawanna County Board of Elections certifying the result of the vote for Republican district committeeman in the first district of the sixth ward of the Borough of Dunmore as conducted in the primary election held May 18, 1954. The county board of elections certified the result as follows: Russell Finn, 69 votes; Stanley Miraglia, 54 votes. The board of elections filed its decision in writing and stated as its reason for certifying the vote in favor

of Finn as against Miraglia that while on the face of the returns Miraglia was reported by the district election board as the winner, a certain number of votes appearing in favor of Miraglia on the paper roll carrying write-in votes on the machines used in the election district were not perforated as required to indicate that the votes were cast in the Republican primary. The board, therefore, rejected all write-in votes which did not appear to carry the proper perforation, as a result of which decision the result submitted by the district election board was changed so as to bring about the election of Finn.

We are informed that the County Board of Elections conducted a hearing and investigation, but since the board made no record we are unable to say upon what testimony, other than the apparent lack of perforation of a certain number of write-in votes for Miraglia, it based its decision. We recognize, as asserted by counsel for Finn in this appeal, that a county board of election is a quasi-judicial body and that its certification made after a hearing and investigation in a disputed election matter is entitled to great weight and should not be lightly disregarded. Nevertheless, when the matter comes before us on appeal and testimony is submitted in full, we are obliged to take the testimony as we have it and base our decision upon facts as developed in full at the hearing on appeal. In our opinion, from the testimony submitted to us we must find that Miraglia received more valid votes than Finn and, therefore, should be declared elected to the office of Republican district committeeman.

The testimony developed these facts:

Finn was a duly designated nominee for the office of district committeeman of the Republican Party, whose name appeared upon the ballot label of the voting machine in row A, column 26. Miraglia was

not a formal nominee but waged a write-in or sticker campaign. His supporters provided a number of rubber stamps bearing his name and persons who desired to vote for Miraglia were able to do so on the machines by lifting the slot over the paper roll, stamping his name thereon, closing the slot and polling the voter lever. Two machines were used in the district. On machine numbered 17800 the board returned 22 votes for Finn and 25 votes for Miraglia. On machine numbered 17801 the board returned 47 votes for Finn and 61 for Miraglia, the total vote as it appeared to the election board then being 69 votes for Finn and 86 for Miraglia. The testimony indicates that immediately upon the closing of the polls both machines were opened, the district election officers removed the paper rolls and proceeded immediately in the presence of supporters of both candidates to count the votes appearing thereon. No protest at the time was made by any one as to the accuracy of the count or as to the return of the vote as announced by the election officers and as contained in the open returns, in the sealed returns and in the minority inspector of election's copy of the return sheet.

In order to comply with the provisions of the Election Code of June 3, 1937, P. L. 1333, sec. 1107, 25 PS §3007, sub-paragraph (f), which provides that voting machines shall be capable of adjustment by election officers so as to permit the voter at a primary election to vote only for the candidates seeking nomination by the political party in which he is registered, and to preclude him from voting for a candidate seeking nomination by any other political party, the voting machines are so adjusted that when a voter in the Republican primary raised the slot over the column provided on the ballot label for voting for any particular office, a single perforation would be made in the paper roll provided for write-in votes. When a

voter in the Democratic Party used the same machine and proceeded to cast a write-in vote for a Democratic candidate in the same column, the machine would make a series of seven perforations in the paper roll. Thus assuming that the machines worked perfectly, it would be impossible for a voter in either party to cross over and vote in an opposite party primary by means of a write-in vote, for the reason that the perforations on the roll would identify the political party in whose primary the voter cast his vote, regardless of the name written in on the paper roll.

In this case, however, we meet this peculiar situation. On examining the roll taken from machine no. 17801 it was found that out of the 60 votes stamped purporting to be for Stanley Miraglia for the office of Republican district committeeman, the roll was not perforated opposite 26 of the stamped-in names. It is to be noted that on no place on the roll appeared any set of seven perforations indicating that any votes were cast by write-in methods on that machine for any candidate in the Democratic Party primary. There were likewise some similar failures on machine no. 17800, but since the numbers involved are insufficient to change the result, we confine our consideration to the effect of the balloting on machine 17801.

The officials of the county board of elections and representatives of the candidates, after discovery in proceedings before the county board of the discrepancies noted above, proceeded to the place of storage of the voting machines and tested both machines used in the election district as to operating perfection with reference to write-in votes in the particular column used for writing in the counted votes. During that test machine 17801 operated perfectly, that is to say, when the slot over the proper column was opened to permit a Republican vote to be entered, a single per-

foration was registered and when the slot over the same column was opened to permit a Democrat vote to be registered, seven perforations appeared. On the other hand, machine 17800, which had appeared to operate properly so far as perforations were concerned in the primary itself, on the test examination failed a number of times to perforate as required. The only conclusion we can draw from these tests is that machines in some respects, no matter how carefully designed, may have operating failures; whether caused by imperfections, wear or other causes does not appear.

The county board of elections, proceeding on the principle that 26 unperforated votes cast for Miraglia were illegally cast, deducted these votes from Miraglia's total, thus giving the election to Finn. The board in its written decision stated as follows:

"It also appears that various write-in votes were cast for Stanley Miraglia of which 54 votes appear to be valid, and an additional 30 votes appear to be invalid, in that the paper rolls in the voting machines did not show the perforations required by law, leading to the possibility that manipulation had taken place affecting 26 votes in one voting machine, which, on being tested, was found in good working order. The four challenged votes in the other machine were insufficient to change the result."

We think that the findings of the board, as expressed above, were insufficient on which to base a legal conclusion that the votes cast for Miraglia were illegally cast. As the unchallenged evidence before this court shows, the rolls were inspected, the votes counted and the results announced immediately after the polls were closed and the machines opened. There is no evidence other than that of the machine itself to indicate the probability or even the possibility that manipulation had taken place. In fact such evidence

as was submitted excluded the possibility of manipulation. In view of the proven fact that the perforating machinery in machines of this type can fail in operation, it seems to us a very difficult conclusion to reach that manipulation could have or did in fact take place on machine no. 17801. It is obvious that in the face of the evidence that immediately on exposing the rolls the names were counted in the presence of observers for each of the contending candidates, that the names could not have been put on after the polls were closed and before the votes were counted. The record likewise shows that the sealed returns, including the paper rolls containing the write-in votes, were returned to the county board of election within one hour after the polls were closed, a circumstance which further seems to exclude the possibility of manipulation after the closing of the polls.

The sealed returns likewise show that the total votes cast in the Republican primary for these two candidates compare generally with the total votes cast for other offices at stake in the same primary. For example, the total votes returned by the election board for the office of district committeeman amounted to 155; for the office of district committeewoman, likewise the subject of a spirited contest but in which both candidates appeared on the ballot label and for whom no write-in votes were reported, amounted to 158. For State committeeman in the same district, again an office subject to contest, 148 votes were cast. Thus the possibility of fraud appears to be further diminished by the fact that the total votes cast in this contest generally compared with the number of votes cast for other offices for which spirited campaigning took place.

If we eliminate the possibility of fraud after the polls closed, counsel for Finn suggest that the same

result may have been accomplished by cross-over voting by Democrats whose votes for State committeeman would be cast in the same write-in column on the paper roll. As against this possibility we have the fact that at no place on the roll are there any write-in votes for any Democratic candidate for this office or for any other office in the Democratic primary and that no set of seven perforations appeared at any place. Again, referring to the sealed returns and examining results of the Democratic primary, we find that for Democratic district committeeman where there was no contest at all 133 votes were cast. For Democratic district committeewoman, again with no contest, 128 votes were cast. For Democratic State committeeman 143 votes were cast. For the Democratic candidate for representative in Congress 129 votes were cast. For the Democratic candidate for representative in the General Assembly 139 votes were cast. Again it appears that the Democratic votes for this particular office compared generally with the voting for the other Democratic candidates; that such discrepancies as did appear were reflected in the varying numbers of votes for other candidates as the voters took more or less interest in the voting for a particular office concerned. If the theory of cross-over voting should be held, it ought to appear that the number of votes cast for Democratic District Committeeman would be substantially less than that cast for the other Democratic candidates, for it is impossible to vote for two candidates for Democratic District committeeman, that is to say, a vote cannot be cast for a candidate whose name appears on the ballot label and at the same time a vote registered for the same office on the paper roll.

It is also to be noted that on the particular machine in question 70 votes were cast for Democratic district committeeman, which with one exception compares

with the number of votes cast for other Democratic candidates on that machine. The only office which showed more than 76 votes being cast on this machine was the office for Governor, where 84 votes combined were cast for three different candidates. If 26 votes were illegally cast by Democrats attempting to vote on the paper roll for a Republican candidate, it would have been impossible for this machine to show 70 votes for the Democratic candidate for district committeeman.

Accordingly, reviewing the testimony produced before this court, we are forced to the conclusion that rejecting the 26 votes appearing on machine 17801 would be in effect disenfranchising 26 Republican voters. Section 1407 of the Election Code of June 3, 1937, P.L. 1333, 25 PS §3157, states as follows:

"The Court on an appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates, and to make such decree as right and justice may require."

Based on the evidence as we have analyzed it above, we are of the opinion that right and justice require us to declare that 80 valid votes were properly cast for Stanley Miraglia for the office of district committeeman of the Republican Party in the first district of the sixth ward of the Borough of Dunmore, in the primary election of May 18, 1954, and that 69 votes were properly cast for Russell Finn. Accordingly, we enter the following

### Order

Now, July 12, 1954, the appeal of Stanley Miraglia from the decision of the county board of elections certifying the vote for the office of Republican district committeeman in the first district of the sixth ward of the Borough of Dunmore, in the primary

election of May 18, 1954, is sustained. We certify that in that election for the office Stanley Miraglia received 80 votes and Russell Finn received 69 votes. The county board of election is directed to amend its records accordingly and to issue the appropriate election certificate to Stanley Miraglia.

For the purpose of the record the written decision of the county board of election is directed to be filed herewith.